Argued and submitted May 4, decision of the Court of Appeals and judgment of the trial court affirmed November 16, 1988

## GIBSON,
*Petitioner on Review,*

*v.*

## SAFEWAY STORES, INC.,
*Respondent on Review.*

(TC No. 85-4-113; CA A42800; SC S34752)

764 P2d 548

Orrin Leigh Grover, Woodburn, argued the cause and filed the petition for petitioner on review.

Barry M. Mount, Portland, argued the cause for respondent on review.

PETERSON, C. J.

## PETERSON, C. J.

This workers' compensation case involves issues similar to those in *Blacknall v. Westwood Corporation,* 307 Or 113, 764 P2d 544 (1988) also decided this day. As in *Blacknall,* the trial court granted the defendant Safeway's motion for summary judgment, and the Court of Appeals affirmed. *Gibson v. Safeway Stores, Inc.,* 88 Or App 306, 744 P2d 1336 (1987). We affirm as well.

The essential facts are without material dispute. The plaintiff was employed by Wallace Security Systems (Wallace) to work as a security guard at a Safeway warehouse in Clackamas, Oregon. Wallace was under contract with Safeway to provide security services as needed. The plaintiff allegedly fell and was injured while on routine patrol of the fenced perimeter of Safeway's property.

Although the plaintiff was employed by Wallace, Safeway, by virtue of its agreement with Wallace, had the right to and in fact did exercise control over the plaintiff in these respects:

1. Safeway determined the specific tasks to be performed by the plaintiff.

2. Safeway determined how many Wallace personnel would be needed to accomplish the security tasks.

3. Safeway set the specific hours and shifts the plaintiff would work.

4. Safeway directed the routes of travel that the plaintiff would follow within the Safeway Distribution Center.

5. Safeway determined the specific timing of the guard routes within the Center.

6. Safeway determined the specific security procedures to be used by the guards and promulgated these procedures in a securities manual which the Wallace personnel were required to follow.

7. Safeway had the right to dismiss or terminate any guard who was not performing his or her job in accordance with Safeway's procedures.

8. Safeway had the right to control the Wallace guards while they were on the Safeway premises.

At the time of the plaintiff's injury, Safeway was self-insured. Wallace was compensated by Safeway for the security guard services provided to Safeway. Wallace provided workers' compensation benefits to the plaintiff.

As in *Blacknall,* and for the reasons set forth in *Blacknall,* it is established that the plaintiff was a subject worker of the defendant, ORS 656.005(25), and that the defendant was the plaintiff's employer under ORS 656.017(1).

The remaining question is whether the defendant met the ORS 656.017(1) requirement that the employer "maintain assurance" that its subject workers "will receive compensation for compensable injuries * * * by qualifying * * * (a) [a]s a carrier-insured employer * * * or (b) [a]s a self-insured employer * * *." As stated, it is established that the defendant was a self-insured employer. It had complied with ORS 656.017(1). Because of ORS 656.403(1), it had "assume[d] the responsibility for providing compensation due subject workers * * *." As in *Blacknall,* had the plaintiff made a workers' compensation claim against Safeway, the claim would have to be paid.[1] Under the reasoning set forth in *Blacknall,* 307 Or at 117-19, the defendant is entitled to immunity under ORS 656.018(1)(a).

The plaintiff also asserts that the 1975 repeal of a statute then popularly referred to as the "joint premises" statute (*former* ORS 656.154(1)) was intended "to limit the workers' compensation immunity to the direct employer." That statute, ORS 656.154(1) (1973), read:

"If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman * * * may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman * * *."

---

[1] We express no opinion as to the ultimate responsibility for payment as between SAIF and Wallace's compensation carrier. ORS 656.307.

Oregon's joint supervision and control doctrine extended immunity to a third party who — along with the injured party's employer — had joint control over the *premises* where the claimant worked. This exemption from liability applied to employers involved in a common enterprise on the same premises and where each employer exercised supervisorial power over the injured employee. The focus was *not* on the employer-employee relationship but on the *place* of the injury. In *Mason v. Sutherlin Machine Works,* 240 Or 51, 54, 399 P2d 1016 (1965), the court stated:

> "It is clear that the express purpose of this provision of the act, *exempting employers in joint control of premises while engaged in a common enterprise,* was to spread the contractual provision of the act so that, while such an operation is in effect, the employees of each employer are to be considered in the same posture as if there was but a single employer." (Emphasis added.)

The repeal of ORS 656.154(1) in 1975 effectively withdrew the immunity of a second employer from the damage claim of a worker employed by another employer if the worker was injured on premises over which the second employer and the other employer had "joint supervision and control." ORS 656.154(1) did not concern the immunity of the injured person's employer provided by ORS 656.018(1). The repeal of ORS 656.154(1) did not reduce or otherwise affect the immunity of a worker's employer from a damage claim by a worker against his or her employer.

The decision of the Court of Appeals and the judgment of the trial court are affirmed.